UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FRANKLIN HAMMONDS,**

    **Plaintiff,**

v.                                             Case No. 8:06-cv-1449-T-TBM

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                  /

## **O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-seven years of age at the time of his administrative hearing in May 2005. Plaintiff has an eleventh grade education with a GED. He has past relevant work in construction, grove work, and clean-up jobs and has worked as a mold helper and sawyer. Plaintiff applied for disability benefits in October 2002, alleging disability as of October 11, 2002, by reason of seizures, nerve damage in his left hand and arm, back pain, and memory

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

and concentration problems. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff identified several problems which he believed rendered him incapable of working a full-time job: a disfiguring injury to his left hand that occurred in February 1997; a bad back; pulmonary vascular disease; a lack of concentration; and a limited ability to walk, lift, and stand. Regarding his hand, Plaintiff testified he lost part of his left hand in an accident and it is held together by screws and clamps. As a result, Plaintiff cannot close his hand into a fist or use it repeatedly because it spasms and causes him pain. By Plaintiff's description, he can use his hand working as a helper but he is unable to use it for much else. He claimed a bad back, which is part muscle related and part the product of pulmonary vascular disease. By his account, most activity causes him pain in his back and his legs to swell. He cannot bend down and then get up without difficulty.

At the time of the hearing, Plaintiff was residing in what he described as a "rehab" house and was working part of each day at the facility. By his account, he was capable of doing some chores such as cleaning up, but he was unable to stand for too long without his legs swelling. As a consequence, he tried to sit with his legs elevated as much as he could. He testified his ankles hurt constantly, especially in the morning and when he tries to stand too long. Plaintiff also claimed chest pain several times a day. By his account, the pain just come and go. Plaintiff also claimed to suffer from seizures, which he describes as him

"blanking out." When he gets excited, he feels like he is going to pass out. Plaintiff also complained of difficulty with concentration and memory and he hears voices calling his name several times a day. By his account, he is a workaholic and he gets depressed because he cannot work. He has occasional thoughts of suicide.

Plaintiff testified that he could walk about 100 yards before his legs swell. He estimated he can stand for about ten minutes before he has to sit, although he could stand for longer if he needed to get something. Plaintiff stated he could sit without difficulty if his legs are elevated. However, if he cannot elevate his legs they begin to swell after fifteen to twenty minutes. He described his ability to lift as pretty good in his right arm, indicating that he could possibly lift twenty pounds but that he could not do that all day.

Plaintiff was working up to four hours a day at the facility where he lived. In addition, he would attend church services and other classes. He indicated he could generally care for his personal hygiene and do his own laundry. Plaintiff is without any insurance or social service funds and receives all his medication through charity. He testified somewhat vaguely that his medication leaves him sleepy. *See* Plaintiff's testimony (R. 298-337).

The ALJ next took testimony from Randy Salmons, a vocational expert ("VE"). He initially testified on an assumption of an individual of Plaintiff's age, education, and work experience who was capable of sitting for six hours in an eight-hour day, standing and walking two hours in an eight-hour day, occasionally using the left hand with no fine finger movement, and performing simple, repetitive tasks but who was incapable of lifting more than ten pounds. On this assumption, the VE testified that Plaintiff could not perform his past relevant work or any other work due to the inability to use both hands. On a second

assumption that assumed the ability to perform medium exertional work that did not require climbing, fine finger movement with the left hand, concentrated exposure to hazards, more than simple repetitive tasks, and more than frequent balancing, stooping, kneeling, crouching, and crawling, the VE opined that such individual could perform cleaning work in a motel/hotel environment, janitorial work, and work as a kitchen helper/restaurant worker. On a third hypothetical, the VE assumed the ability to perform light exertional work with the ability to handle, finger and feel with the left hand on a frequent basis. On that hypothetical, such individual would not be capable of performing Plaintiff's past work but could work as a car rental driver, transporter, parking lot attendant, and cashier in a store setting. If such individual could perform no fine fingering with his left hand, the VE opined that the limitation would erode the occupational base for the cashier jobs. When questioned by Plaintiff's counsel who added to the second and third hypothetical questions an additional limitation for having to elevate the legs to hip level for 25% of the day, the VE opined that the occupational base would be eroded. *See* VE's testimony (R. 337-344).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of October 26, 2005, the ALJ determined that while Plaintiff has severe impairments related to chronic back pain, peripheral vascular disease of the lower extremities, status post-traumatic amputation of the fifth ray of the left hand, cardiomegaly, an affective disorder and substance addiction disorder, in apparent remission, he nonetheless had the residual functional capacity to perform light exertional work with the following

limitations: frequent climbing, balancing, stooping, crouching and crawling; frequent handling and feeling with his left hand; no fine finger movement in his left hand; must avoid all exposure to hazards; and the ability to understand, remember, and carry out very slow and simple instructions. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R.26-34). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate

that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

6

(1) The ALJ erred by relying on outdated mental RFC assessments completed by state agency medical consultants, rather than obtaining an updated assessment by a consultative examiner, treating physician, or medical expert; and

(2) The ALJ erred by failing to develop the record regarding the Plaintiff's vascular disease.

By his first claim, Plaintiff notes that while the ALJ sent him for a psychological consultative evaluation in April 2003, the examiner was not asked to render a function-by-function assessment of his work-related mental abilities.[2] Plaintiff also faults the ALJ for not obtaining a residual functional capacity ("RFC") assessment from a treating physician or other medical expert. Despite this record (or lack thereof), Plaintiff claims the ALJ then erroneously adopted the outdated assessment of the state agency reviewing, nonexamining doctors.[3] Citing to a variety of decisions, Plaintiff concludes that the ALJ should have obtained an RFC assessment from a consultative examiner, treating physician, or medical expert and urges that the decision must be vacated.

By his second claim, Plaintiff notes that his counsel requested a consultative evaluation of his vascular disease and the ALJ rejected the request by finding sufficient evidence of record to allow for a decision. Plaintiff complains that the evaluations in this case did not fully discuss his vascular disease and were not conducted by a vascular specialist.

---

[2] It appears more accurate that the consultative evaluation was ordered during the initial application process rather than by the ALJ. (R. 42-45).

[3] Here, the decision reflects that the ALJ cited to the mental RFC assessments by psychologists Dr. Edmund S. Bartlett (R. 158-75) and Dr. K. Eeltink (R. 220-37).

Urging that the ALJ has a duty to fully develop the record and order a consultative examination when the record is incomplete, Plaintiff urges again that the decision be vacated and remanded for further proceedings.

Regarding both claims, Plaintiff is undoubtedly correct that the ALJ has a basic duty to develop a full and fair record. *See Ellison v. Barnart*, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for [her] to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). However, it is the claimant's burden to prove that he is disabled and he is responsible for producing evidence in support of his claim. *See Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). Furthermore, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.* Under this standard, the ultimate issue under both claims is whether a further mental or physical RFC assessment was necessary for the ALJ to reach an informed decision in this case. After considering the decision and the entire medical record, I conclude that further assessments were not necessary and that Plaintiff fails to demonstrate prejudice so as to warrant a remand.

Initially, it is worth noting that neither Plaintiff nor his counsel requested that the ALJ obtain another mental consultative evaluation or RFC. Nor did either complain to the ALJ about the adequacy of the record. On the other hand, as discussed below, the decision notes that counsel expressly requested a further work-up of Plaintiff's vascular disorder (R. 31), and thus he was fully aware of his right to do so. In the circumstances, Plaintiff's criticism of the ALJ must surely be tempered by his own failure to act. It is also significant that a fair reading of Plaintiff's testimony suggests that while he complained of problems with depression because he could not work like once did and some vague limitations in memory and concentration, his chief functional complaints related to his physical limitations. In any event, after considering the entire medical record, I conclude that the process employed by the ALJ in determining the functional limitations caused by Plaintiff's mental impairments was consistent with applicable regulations and case law and her conclusions are supported by substantial evidence. Plaintiff does not demonstrate otherwise.

As noted above, a psychological consultative evaluation by Dr. David M. Zelbobitz was obtained in April 2003 during the administrative review process.[4] While the report from this evaluation did not contain a full RFC assessment, it reflects a notably fair and complete assessment of Plaintiff's then current mental status based on Plaintiff's history and subjective

---

[4]Insofar as Plaintiff complains that the SSA did not seek the RFC assessment from one of Plaintiff's medical providers, the record reflects that there was a lack of current source for such information and no treating doctor wished to perform the evaluation. (R. 42-45). A similar explanation was given for obtaining the physical consultative examination from Dr. Morris Kutner. (R. 38). This process is consistent with the regulations. *See* 20 C.F.R. §§ 404.1514-404.1519i. On this appeal, Plaintiff does not address these record entries or demonstrate that pertinent treating source(s) were available to conduct such examinations.

complaints. By this assessment, Plaintiff was diagnosed with major depressive disorder (recurrent, severe, without psychotic features) and cocaine abuse, and was in need of continued treatment at the Behavioral Health Division at Winter Haven Hospital ("Behavioral Health"). (R. 147-50). The following month, Dr. Edmund Bartlett reviewed the report of Dr. Zelbobitz and the notes from Behavioral Health. He assessed Plaintiff as having moderate limitations in maintaining social functioning and concentration, persistence or pace, and mild limitations in activities of daily living, but capable of performing simple and repetitive tasks. Significantly, Plaintiff does not challenge the substantive findings of either of these doctors. In addition, Plaintiff presented the ALJ with treatment records from Behavioral Health for the period of 2002 through 2003. (R. 189-219). A second Psychiatric Review Form was completed thereafter by reviewing doctor, Dr. Eeltink. This report reflects that the psychologist reviewed more of the records from Behavioral Health, and in August 2003 similarly assessed Plaintiff as capable of completing simple, repetitive tasks within his physical limitations. Again, Plaintiff does not challenge the substantive findings in these records or this assessment.

Thereafter, reports from Plaintiff's discharge from Behavioral Health in January 2004 (R. 261-64) and treatment notes from 2004 and 2005 from a free clinic (R. 265-76) were submitted to the ALJ. When considered as a whole, the notes from Behavioral Health can be read to show some improvement in Plaintiff's mental status with treatment and Plaintiff does not demonstrate otherwise on this appeal. The notes from the free clinic reflect that Plaintiff continued to be maintained on prescribed medication for bipolar disorder and depression but reflect little of his functional capacity. Significantly, all of these records were fairly reviewed

and considered by the ALJ in reaching her conclusion. By her consideration, the record as a whole was consistent with the mental RFC assessments from the state agency doctors which she adopted. Plaintiff does not demonstrate that this conclusion was in error. While Plaintiff urges that the assessments were "outdated," he fails to demonstrate how this is so in light of the later record before the ALJ. Furthermore, he makes no convincing showing that the records were inadequate for the ALJ to make an informed decision concerning the functional limitation imposed by his mental condition.

In the end, the ALJ assessed Plaintiff as capable of understanding, remembering and carrying out very short and simple instructions and thus unskilled work. There was adequate record to permit this conclusion and the conclusion is supported by the substantial evidence. In the absence of some showing by the Plaintiff that this process prejudiced his rights and resulted in an incomplete record, I am unable to conclude that Plaintiff is entitled to any relief on his first claim.

I reach a similar conclusion on Plaintiff's second claim. As the decision reflects, the ALJ duly considered Plaintiff's request for a physical consultative examination but denied it given the fact that the medical evidence adequately discussed Plaintiff's lower extremity problems. Plaintiff fails to demonstrate any error in this determination. Further, a review of the record reveals that this conclusion by the ALJ is supported by substantial evidence. In any event, Plaintiff makes no adequate showing of prejudice to warrant a remand.

The record as reviewed by the ALJ reflected that early in the administrative review process, a physical consultative examination was ordered and performed by Dr. Kutner in February 2003. By Dr. Kutner's report, Plaintiff was examined on chief complaints of back

pain, history of seizures, and an inability to use the left arm properly.  On physical examination, his extremities were warm with good peripheral pulses and no clubbing or cyanosis was noted.  Range of motion was generally noted as normal.  Peripheral neuropathy was not noted and gait was normal.  (R.135-38).  Thereafter, in May 2003, Plaintiff made an emergency room visit for swelling in his feet and was prescribed medication for edema.  (R. 177-86).  Brief records from the Florida Department of Corrections reveal that Plaintiff was prescribed a cane to assist with his walking and limited to no prolonged standing or walking.  On his release in 2004, it was noted that he had been hospitalized within the past year for cellulitis, PVD, and muscles spasms in his back and it was recommended that he follow-up with an orthopedist.  (R.246-48).  Records from the free clinic between July 2004 and May 2005 reflect conservative care for a number of conditions including peripheral vascular disease.  (R. 265-76).  Plaintiff's various conditions were treated with medications.  The reports routinely noted that Plaintiff was in no acute distress and some reflect no edema.  *Id*.  Similarly, a couple of notes from the Family Health Center in March and April 2005 reference vascular disease and edema in his legs.  (R. 282-83).  Finally, in a report of an orthopedic consultative examination conducted in July 2005, two months after the administrative hearing and apparently in connection with another application for benefits, Dr. James D. Melton, Jr, reported rather extensively on Plaintiff's complaints of leg pain and he included a physical RFC assessment.  (R. 87-91).  The report noted Plaintiff's complaints of pain in both legs and the absence of specific injury, as well as the doctor's observations that Plaintiff was ambulatory without aid and not wearing any brace or other support.  Pertinent to Plaintiff's lower extremities, the doctor noted a full range of motion in the low back and lower

extremities but edema below the knees with skin rashes and discoloration consistent with chronic vascular disease and perhaps venous stasis. (R. 287). Additionally, the doctor noted weak pulses in both feet and ankles and remote joint swelling, but essentially full motion in all major joints in the lower extremities with sensation intact in both feet. *Id*.

By this doctor's RFC assessment, while Plaintiff suffered lumbar sacral sprain, chronic vascular disease in the lower extremities bilaterally, and post-traumatic amputation fifth ray of his left hand, from an orthopedic standpoint he was not limited in lifting and carrying by his conditions and he could stand and walk six hours in an eight-hour day. He was limited to only occasional climbing, balancing, kneeling, crouching, crawling and stooping and limited in his left hand with reaching, handling, fingering, and feeling. The doctor noted that the Plaintiff's vascular status should be taken into consideration along with his other medical conditions. In an accompanying range of motion report, the doctor concluded that Plaintiff had slight limitations only in the left shoulder and the left wrist and hand. (R. 292-94).

As evidenced by the decision, the ALJ reviewed all of these records in arriving at her RFC assessment of Plaintiff and expressly determined that no further work-up of the vascular condition was necessary for her decision. To the contrary, Plaintiff urges that the record as to his peripheral vascular disease was incomplete and required further work-up by a vascular expert. However, he fails to demonstrate any gap in the record or other prejudice to support such contention. It is noteworthy that Plaintiff was free to submit his own further reports and assessments from his treating doctors on this condition but apparently chose not to. The records that were before the ALJ gave a longitudinal view of this condition and nothing about

those reports suggested a debilitating impairment at any time during the period under consideration. To the benefit of Plaintiff, the ALJ discounted portions of Dr. Melton's report and rendered a decision based on the entirety of the medical records. By my review, the ALJ gave full and fair consideration to the Plaintiff's claims on a record that was fully and fairly developed and Plaintiff does not show otherwise. No treating or examining doctor had imposed functional limitations based on the vascular condition. I conclude that in light of the record, the ALJ properly determined that yet another consultative examination was not necessary.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 16th day of January 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record